UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LEONARDO ISAIAS CASTRO CHIVALAN,

Petitioner,

v.

CHRISTOPHER J. LAROSE, Senior Warden of Otay Mesa Detention Center; DAVID J. VENTURELLA, Director of Immigration and Customs Enforcement; GREGORY J. ARCHAMBEAULT, Field Office Director of Enforcement and Removal Operations, San Diego Field Office, Immigration and Customs Enforcement; TODD BLANCHE, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,

Respondents.

Case No.: 3:26-cv-04258-LEK-SBC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Before this Court is Petitioner Leonardo Isaias Castro Chivalan's ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), filed on July 24, 2026. [Dkt. no. 1.] The respondents, identified in the Petition as Christopher J. LaRose, Senior Warden of Otay Mesa Detention Center; David J. Venturella, Director of Immigration and Customs Enforcement; Gregory J. Archambeault, Field Office Director of Enforcement and Removal Operations, San Diego Field Office, Immigration and Customs Enforcement; Todd Blanche, U.S. Attorney

General; Executive Office for Immigration Review; and Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("Respondents"), filed a response to the Petition ("Response") on August 3, 2026. [Dkt. no. 4.] Petitioner filed a traverse in support of the Petition ("Traverse") on August 4, 2026. [Dkt. no. 5.]

**BACKGROUND**

Petitioner is a native and citizen of Guatemala. See Petition at ¶ 29; id., Exh. 4 at PageID.31 (English translation of Sworn Declaration ("Castro Chivalan Decl.")) at ¶ 1.[1] Petitioner states that, although he is not certain of the date, he entered the United States around November 26, 2006, and he has resided in the country continuously since that time. See id., Exh. 4 at PageID.31 at ¶ 2; Petition at ¶ 2. The record indicates that Petitioner entered the country without inspection. See Petition, Exh. 1 (Order of the Immigration Judge, dated 7/21/26) at PageID.23. Petitioner has been living in West Palm Beach, Florida for many years. See Petition, Exh. 4 at PageID.31 (Castro Chivalan Decl.) at¶ 3. He and his partner have been together for twelve years, they have two children together, and Petitioner is the primary provider for their family. See id. at ¶¶ 4-5, 7. Petitioner asserts that he has no criminal history in the United States. See id. at ¶ 12.

On June 9, 2026, in Florida, Petitioner was driving to work with two coworkers when he noticed a vehicle following them. See id. at ¶ 9; Petition at ¶ 32. The vehicle then flashed its lights, which caused Petitioner to stop his car. Petitioner asserts that four or five people, who later identified themselves as immigration agents, approached his car. The agents asked for Petitioner's driver's license and his consular identification, neither of which Petitioner had. The agents then told Petitioner that he was being detained. See Petition, Exh. 4 at PageID.31 (Castro Chivalan Decl.) at ¶¶ 9-10.

---

[1] PageID.33-34 of Exhibit 4 is the Spanish declaration, and PageID.32 is the signature page to the Castro Chivalan Declaration, as well as the Declaration of Translation and Interpretation.

After Petitioner and his coworkers got out of the car, the agents said they were looking for a particular person and, if Petitioner and his coworkers told them where the individual was, Petitioner and his coworkers would be released. However, Petitioner did not know the person they were looking for. See id. at ¶ 11. The agents did not show Petitioner any documentation that they were searching for Petitioner or his coworkers. See id. at ¶ 12.

Petitioner asserts that, after the traffic stop, he was first taken to the Miramar Detention Center and then to a number of other facilities before he was transferred to the Otay Mesa Detention Center in San Diego, California, where he remained through the filing of the Petition. See id. at ¶ 13; Petition at ¶ 16.

Count I of the Petition argues that Petitioner's detention violates the Immigration and Nationality Act ("INA") because his detention is governed by Title 8 United States Code Section 1226(a), and therefore he is not subject to mandatory detention under Title 8 United States Code Section 1225(b)(2). See Petition at pgs. 8-11. Count II argues that Respondents' detention of Petitioner violates his right to due process under the Fifth Amendment because he was arrested without a valid warrant or lawful process. See id. at pgs. 12-14.[2] Among other things, Petitioner asks this Court to order his immediate release. See id. at pg. 16.

Respondents acknowledge that "[o]n July 30, 2026, the Ninth Circuit [Court of Appeals] held and clarified that unadmitted aliens present in the interior of the United States are subject to 8 U.S.C. § 1226 and not subject to 8 U.S.C. § 1225." Response at 1; see also Rodriguez Vazquez v. Bostock, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026) (holding that noncitizens "present without admission who are apprehended

---

[2] Count II of the Petition is captioned "Violation of the Immigration and Nationality Act," [Petition at pg. 12,] despite Count I advancing Petitioner's INA claim, see id. at pgs. 8-11, and Count II advancing Petitioner's Fifth Amendment claim, see id. at pgs. 12-14. Although less than artful, the Petition nevertheless advances separate and cognizable claims for habeas relief.

in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)”). Respondents therefore also “acknowledge[] that Petitioner is subject to detention under 8 U.S.C. § 1226,” and “do not oppose an order from this Court directing a bond hearing be held pursuant to 8 U.S.C. § 1226(a).” [Response at 1-2.] Respondents, however, oppose Petitioner’s request for immediate release. See id. at 2.

## STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his or her confinement pursuant to Title 28 United States Code Section 2241. See 28 U.S.C. § 2241(a); Zavala v. Ives, 785 F.3d 367, 370 n.3 (9th Cir. 2015). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. See 8 U.S.C. § 1252(a)(1), (5); see also Alvarez-Barajas v. Gonzales, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process - for example, a claim of indefinite detention - federal habeas corpus jurisdiction remains in the district court. See Alvarez v. Sessions, 338 F. Supp. 3d 1042, 1047-48 (N.D. Cal. 2018) (citations omitted); see also Nadarajah v. Gonzales, 443 F.3d 1069, 1076 (9th Cir. 2006).[3]

## DISCUSSION

There is no dispute that the discretionary detention procedures of Section 1226(a) govern Petitioner’s detention. See Response at 1. Accordingly, this Court turns to Petitioner’s argument that he is entitled to immediate release. Petitioner argues that Respondents failed to comply with the warrant requirement of Section 1226(a) or its

---

[3] Nadarajah was abrogated on other grounds by Jennings v. Rodriguez, 583 U.S. 281 (2018), as recognized by Esquivel-Ipina v. LaRose, 812 F. Supp. 3d 1073, 1077 (S.D. Cal. 2025).

implementing regulations in detaining Petitioner, and that the remedy for this violation is immediate release. See Petition at ¶ 51; Traverse at 3. Respondents argue that "Petitioner was issued an administrative warrant on June 9, 2026." See Response at 2 (citing id., Exh. 1 (DHS Warrant for Arrest of Alien, Form I-200, dated 6/9/26 ("Form I-200"))). They submit that "8 U.S.C. § 1357(a)(2) authorizes warrantless arrests and 8 C.F.R. § 287.3(d) provides the government 48 hours to issue a warrant if it determines that the noncitizen will remain [in] custody." [Id. at 2 n.3 (citation omitted).] Petitioner responds that, to the extent Respondents argue that Petitioner's detention was authorized as a warrantless arrest, the detention was nevertheless unlawful because "Respondents do not provide any evidence or argument that Petitioner was likely to escape or that exigent circumstances prevented officers from obtaining an administrative warrant before the arrest." See Traverse at 2.

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citation omitted). This protection applies to noncitizens as it does to United States citizens. See Wong Wing v. United States, 163 U.S. 228, 238 (1896) ("[E]ven aliens shall not . . . be deprived of life, liberty or property without due process of law.").

Title 8 United States Code Section 1357(a)(2) provides that an immigration officer may

> arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be

> taken without unnecessary delay for examination before an officer of the Service[4] having authority to examine aliens as to their right to enter or remain in the United States.

Section 1357(a)(2)'s "'reason to believe' requirement is the equivalent of 'the constitutional requirement of probable cause.'" See M-J-M-A- v. Hermosillo, 822 F. Supp. 3d 1147, 1172 (D. Or. 2026) (quoting Tejeda-Mata v. Immigr. Naturalization Serv., 626 F.2d 721, 725 (9th Cir. 1980)).

> Under 8 C.F.R. § 287.3(c)-(d), following a warrantless arrest an officer must promptly advise the individual of the reasons for arrest and of the right to representation. Within 48 hours, the government must determine whether the person will remain in custody or be released on bond, and whether a Notice to Appear and warrant of arrest will issue. Id. § 287.3(d). Only in the event of an "emergency or other extraordinary circumstance" may that determination be delayed, and then only "within an additional reasonable period of time." Id.
>
> Few courts have interpreted what constitutes an "additional reasonable period of time" under Section 287.3. In Turkmen v. Ashcroft, noncitizen detainees arrested in the wake of the September 11, 2001 attacks alleged that delayed service of Notices to Appear violated their due process rights. No. 02-CV-2307 (JG), 2006 WL 1662663, at *1, *45 (E.D.N.Y. June 14, 2006), *aff'd in part, vacated in part, and remanded*, 589 F.3d 542 (2d Cir. 2009). After their respective arrests, two plaintiffs were not served with Notices to Appear for sixteen days, one for seven days, and another for five days. Id. at *45. The district court rejected their claim, holding that the September 11 attacks qualified as an "extraordinary circumstance" and that delays of several days were reasonable in that context. Id. at *45. The court cautioned, however, that "[t]here is no doubt that at some point after arrest, an alien's due process rights would be violated

---

[4] "The Immigration and Naturalization Service, or 'INS,' was dissolved in 2002 by the Homeland Security Act, Pub. L. No. 107-296 § 101(a) (2002). Under the Act, most of the INS's functions were transferred to various components of the newly constituted Department of Homeland Security ('DHS')." Al Mutarreb v. Holder, 561 F.3d 1023, 1024 n.1 (9th Cir. 2009).

> if he were detained without being served a Notice to Appear." Id. at *46 (emphasis omitted).

Marin v. Noem, Case No. 2:25-cv-09343-CV (SSCx), 2025 WL 3158094, at *3 (C.D. Cal. Oct. 4, 2025) (alteration in Marin). In the instant action, there is no dispute that: 1) Petitioner was detained without a warrant on June 9, 2026, see Petition at ¶ 32; Response at 2 n.3 (Respondents' warrantless arrest argument); 2) an administrative warrant issued later that day, *i.e.*, within forty-eight hours of Petitioner's detention, see Response, Exh. 1 (Form I-200); and 3) a notice to appear was issued more than thirty days after the administrative warrant was issued, see id., Exh. 2 (DHS Notice to Appear, Form I-862, dated 7/14/26 ("Form I-862")).

Assuming, without deciding, that there was probable cause to believe Petitioner was unlawfully present in the United States, see Response, Exh. 1 (Form I-200), the record is devoid of evidence that Petitioner was "likely to escape" before Respondents could obtain a warrant. See 8 U.S.C. § 1357(a)(2). This Court notes that Respondents present no argument that Petitioner presented **any** risk of flight when he was initially detained. On the contrary, the record contains ample evidence to support the inference that Petitioner was not likely to escape before a warrant could be obtained. Petitioner has been with his partner for twelve years, they have two children together, and Petitioner is the parent responsible for providing for their family. [Petition, Exh. 4 at PageID.31 (Castro Chivalan Decl.) at ¶¶ 4-5, 7.] Respondents' belief that Petitioner was present in the United States unlawfully does not in and of itself result in an assumption that Petitioner was likely to escape before Respondents could obtain a warrant. See A.B.D. v. Wamsley, Civ. No. 6:25-cv-02014-AA, 2026 WL 178306, at *12 (D. Or. Jan. 22, 2026) ("Nor can it be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by ICE. Such a reading would render the limitations on warrantless arrest created by . . . § 1357(a)(2) meaningless." (quotation marks and citation omitted)).

Accordingly, this Court concludes that Petitioner's detention without a warrant violated Section 1357(a)(2) and warrants immediate release. See Gomez v. Wofford, Case No. 1:26-cv-05299 (VC), 2026 WL 2065708, at *2-3 (E.D. Cal. July 16, 2026) (ordering that the petitioner be immediately released after concluding that the petitioner's detention was governed by Section 1226 and that no exceptions for a warrantless arrest under Section 1357(a)(2) applied).

Further, Respondents' invocation of Section 287.3 is unavailing. Among other things, that regulation provides that, subject to some exceptions that do not apply here: 1) an officer other than the arresting officer must promptly interview the noncitizen; 2) the noncitizen must be advised of the reasons for his arrest and his right to be represented at no cost to the government; and 3) a custody determination must be made within forty-eight hours of the arrest unless there is an emergency or an extraordinary circumstance. See 8 C.F.R. § 287.3(a), (c), (d). Respondents present no evidence that they complied with Section 287.3. Indeed, Respondents do not reference any "'emergency or other extraordinary circumstance'" to explain why the Form I-862 was issued on July 14, 2026, instead of "'within an additional reasonable period of time.'" See Marin, 2025 WL 3158094, at *3 (quoting 8 C.F.R. § 287.3(d)); see also id. at *4 (concluding that the petitioner's medical condition, *i.e.*, a broken leg, did not justify the respondents' failure to comply with Section 287.3(d)). In any event, compliance with the procedural requirements under Section 287.3 says nothing about whether the preceding arrest itself complied with Section 1357(a)(2), and the regulation itself presumes a noncitizen's arrest is made consistent with the statute. See 8 C.F.R. § 287.3(a) (referring

to an "alien arrested without a warrant of arrest **under the authority contained in section 287(a)(2) of the [INA]**") (emphasis added).[5]

This Court concludes that Petitioner's detention without a valid warrant or lawful process violates his due process rights under the Fifth Amendment. Providing Petitioner a bond hearing would not remedy the Fifth Amendment violation he has already experienced. Only release from detention can accomplish that now.

## CONCLUSION

For the foregoing reasons, Petitioner Leonardo Isaias Castro Chivalan's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, filed July 24, 2026, is GRANTED.

Respondents are ORDERED to present Petitioner with the following options for his release: 1) immediate release in this District, no later than **twenty-four hours** after the filing of this Order; or 2) release in or near West Palm Beach, Florida by **September 3, 2026.** Respondents are also ORDERED to return to Petitioner all of his belongings immediately upon his release.

Further, Respondents are ENJOINED AND RESTRAINED from: re-detaining Petitioner unless Respondents demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that Petitioner presents a flight risk or danger to the community such that his physical custody is legally justified; placing Petitioner in an Alternative to Detention program; and placing an ankle monitor on Petitioner upon his release.

---

[5] Section 287(a)(2) of the INA was codified at Section 1357(a)(2). See Garcia Gabriel v. Hermosillo, CASE NO. 2:25-cv-02594-DGE-GJL, 2026 WL 194233, at *6 n.8 (W.D. Wash. Jan. 26, 2026).

The parties are ORDERED to file a joint status report by **September 10, 2026**, confirming that Petitioner has been released and that his belongings have been returned.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 27, 2026.

/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge